UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUAN CHAVEZ RAMIREZ,
Plaintiff,

v.

SERGIO ALBARRAN, et al.,
Defendants.

Case No. 26-cv-13183-WHO

**ORDER GRANTING TEMPORARY RESTRAINING ORDER AND SETTING PRELIMINARY INJUNCTION HEARING**

Petitioner-plaintiff Juan Chavez Ramirez ("Chavez Ramirez") moves the Court *ex parte* for a temporary restraining order that would, among other things, require his immediate release from ongoing detention by agents of Immigration and Customs Enforcement ("ICE") and prohibit ICE from re-arresting Chavez Ramirez without affording him reasonable notice and a hearing before a neutral decisionmaker. For the reasons set forth below, Chavez Ramirez's motion is **GRANTED**. I **ORDER** respondents to release Chavez Ramirez from his detention and prohibit them from re-arresting or otherwise re-detaining Chavez Ramirez without first providing him a hearing before an immigration judge at which the government establishes by clear and convincing evidence that detention is necessary to prevent his flight or to protect the public.

**BACKGROUND**

Chavez Ramirez is a native and citizen of Mexico. Petition for Writ of Habeas Corpus ("Pet.") [Dkt. No. 1] ¶ 11. He initially entered the United States without inspection in 2021, but was "not encountered by Border Patrol when he entered, has never been detained or released by ICE, has never been in removal proceedings, has never received a Notice to Appear, and has no order of removal." *Id.* ¶ 17. He has no criminal history. *Id.* ¶ 20. He is married to his wife Yazmin Espinoza Lugo ("Lugo"), a United States citizen, and the couple have two United States citizen children. *Id.* ¶¶ 18-19.

United States District Court
Northern District of California

Chavez Ramirez alleges that Lugo completed a Form I-130 (Petition for Alien Relative) on his behalf, which was approved on April 16, 2026. *Id.* ¶ 18. On October 15, 2026, the United States Customs and Immigration Services ("USCIS") issued a notice "directing [Lugo] and Petitioner to appear for an interview on the approved petition at the USCIS San Francisco office . . . at 9:00 a.m. on November 4, 2026." *Id.* The USCIS reopened his petition that same day. *Id.* When Lugo and Chavez Ramirez appeared for their interview, a USCIS agent split the pair up to interview them separately. *Id.* ¶ 21. Two ICE agents then entered the office and arrested Chavez Ramirez on the basis of a "prior removal order." *Id.* ¶ 22. His attorney objected that "no removal order had ever been entered against him." *Id.* The ICE agents confirmed with their supervisor that no removal order had been entered, but changed their position, asserting that they were detaining Chavez Ramirez based on an outstanding Notice to Appear. *Id.* Neither Chavez Ramirez nor his attorney allege to have seen or read this Notice. *Id.* One of the agents quickly flashed a warrant with his name on his phone but did not allow Chavez Ramirez or his attorney to review it. *Id.* ¶ 23. When his attorney questioned whether a judge signed the warrant, the agent said that "their supervisor had signed it." *Id.*

The agents took Chavez Ramirez to a separate holding area from Lugo or his attorney. *Id.* ¶ 24. His attorney waited over five hours for a copy of his arrest warrant and the Notice to Appear, which were promised to her by the ICE agents. *Id.* ¶¶ 23-24. Since his arrest, Chavez Ramirez has not been provided a copy of "any arrest warrant, any Notice to Appear, any Notice of Custody Determination, or any other document, with the sole exception of an inventory of his personal property." *Id.* ¶ 25.

Chavez Ramirez filed a petition for a writ of habeas corpus against respondents, raising four causes of action: (1) violation of his procedural due process rights under the Fifth Amendment of the United States Constitution; (2) violation of his substantive due process rights under the Fifth Amendment; (3) violation of 8 U.S.C. § 1226(a) and its implementing regulations, and (4) unlawful arrest in violation of the Fourth Amendment. He also filed a motion for a temporary restraining order, requesting that I order respondents to release him from custody, prohibit his removal from this District, and enjoin respondents from re-detaining him without

United States District Court
Northern District of California

notice and a hearing before a neutral decisionmaker.

## LEGAL STANDARD

The standard for issuing a temporary restraining order is largely identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Petitioners seeking such relief must establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of the hardships tips sharply in the plaintiff's favor and the other two Winter factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors – the balance of the equities and the public interest – merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

Although the substantive standards for both motions are similar, the timeframe for a temporary restraining order is different. While a preliminary injunction remains in effect pending final resolution of the litigation, "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)). Federal Rule of Civil Procedure 65(b)(1) allows a temporary restraining order to be issued without notice to the opposing party – i.e., ex parte – only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

**DISCUSSION**

As an initial matter, Chavez Ramirez has satisfied the requirements for issuance of an *ex parte* order. The affidavit of the petitioner's counsel demonstrates that he will suffer immediate and irreparable injury, loss, or damage by virtue of his continued detention before respondent can be heard in opposition, and that counsel attempted to contact the United States Attorney's Office on November 6, 2026.

Chavez Ramirez has demonstrated that he is likely to succeed on the merits of his due process claims. The Due Process Clause of the Fifth Amendment prohibits the government from depriving individuals of their life, liberty, or property without due process of law. U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "Freedom from imprisonment – from governmental custody, detention, or other forms of physical restraint – lies at the heart of the liberty" that the Due Process Clause affords. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Chavez Ramirez first claims that his substantive due process rights were deprived by respondents when he was detained unreasonably. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017); *Zadvydas*, 533 U.S. at 690. Here, Chavez Ramirez maintains that respondents arrested him without determining that he presented a flight risk or was a danger to the community. The record shows that Chavez Ramirez never had a criminal record and was complying with USCIS requests when appearing for his November 6 interview. It also suggests that the government knew of his presence in the United States since at least August 2024, when his wife filed the I-130 form on his behalf, but took no action. *See* Pet. ¶ 37. Nothing in the motion or record suggests that Chavez Ramirez is a danger to his community. Taken together, I agree with Chavez Ramirez that he is likely to prevail on the merits of his substantive due process claim.

Chavez Ramirez is also likely to prevail on his procedural due process claim. Upon

United States District Court
Northern District of California

identifying a protected liberty interest, the district court must determine the procedural due process afforded to the plaintiff under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under the *Mathews* test, courts balance three factors: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Haygood v. Younger*, 769 F.2d 1350, 1357 (9th Cir. 1985) (en banc) (citing *Mathews*, 424 U.S. at 335).

Here, Chavez Ramirez has sufficiently identified his liberty interests in remaining out of immigration custody. District courts routinely hold that noncitizens who are conditionally released into the United States have a significant liberty interest in remaining out of immigration custody. *See e.g.*, *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069 (N.D. Cal. 2025) (Pitts, J.); *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017) ("[A] person who is in fact free of physical confinement – even if that freedom is lawfully revocable – has a liberty interest that entitles him to constitutional due process before he is re-incarcerated"). District courts have also extended this reasoning to apply to noncitizens who were never previously detained. *See, e.g.*, *Anderson v. Chernut*, No. 26-cv-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) ("the government's knowing decision not to detain an individual creates a liberty interest in their continued release"). *But see Figueroa-Santos v. Bowen*, No. 5:26-cv-06188-KES, 2026 WL 3252422, at *4 (C.D. Cal. Oct. 28, 2026) (finding that because there was "no evidence that immigration authorities were aware of Petitioner's presence in the U.S. prior to his recent ICE arrest, . . . the Court [could not] say that the government explicitly or implicitly promised to leave Petitioner at liberty."). Despite this split in authority, Chavez Ramirez has at least shown serious questions that he has a protected liberty interest in his case.

Chavez Ramirez has also properly alleged that the *Mathews* factors suggest respondents failed to provide him with the proper procedural due process protections prior to incarceration. First, Chavez Ramirez's private interest in his liberty is substantial. Chavez Ramirez has resided in the United States for five years, is married to a United States citizen, and has two United States

citizen children. He certainly "has an interest in remaining in [his] home . . . providing for [his] family . . . [and] maintaining [his] relationships in the community." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (Pitts, J.) (citing *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 167684 (N.D. Cal. June 14, 2025)).

Additionally, Chavez Ramirez has shown that his detention without a hearing is an erroneous deprivation of his liberty interests. Chavez Ramirez maintains that the text of 8 U.S.C. § 1226(a) demonstrates that he is not subject to mandatory detention and is afforded certain procedural due process protections. Under 8 U.S.C. § 1226(a), a noncitizen "may be arrested and detained pending a decision on whether [they are] to be removed from the United States." Chavez Ramirez asserts that the implementing regulations of this statute "require an individualized determination of whether the noncitizen poses a danger to persons or property or a risk of flight before the noncitizen may be held in custody," which was never performed. Pet. ¶ 65. Because the record shows that Chavez Ramirez never received a bond hearing or was provided a completed copy of his alleged Notice of Removal, he has sufficiently established a likelihood of erroneous deprivation of his Fifth Amendment rights.

Finally, Chavez Ramirez establishes that additional procedural safeguards – including a hearing before a neutral decision-maker – is "one of the most basic due process protections" and would place a "de minimis . . . burden on the government," especially in light of the potential costs to the public in keeping him detained. *See Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Taken together, the strength of Chavez Ramirez's liberty interest, the high likelihood of erroneous deprivation, and the government's minimal countervailing interest demonstrate that he is likely to succeed on the merits of his procedural due process claim.

Chavez Ramirez similarly has demonstrated a likelihood of irreparable harm in the absence of temporary relief due to his ongoing and likely unconstitutional deprivation of liberty. "The loss or threatened infringement upon [constitutional] rights for even minimal periods of time unquestionably constitutes irreparable injury." *Cuviello v. City of Vallejo*, 944 F.3d 816, 832 (9th Cir. 2019) (citation modified). "When an alleged deprivation of a constitutional right is involved,

most courts hold that no further showing of irreparable injury is necessary." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation modified). It follows from this conclusion that Chavez Ramirez "will likely be deprived of [his] physical liberty unconstitutionally in the absence of an injunction . . . that [he] ha[s] also carried [his] burden as to irreparable harm." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

The final two *Winter* factors – the balance of the equities and the public interest – also tip in his favor. These two factors are merged because the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Because Chavez Ramirez sufficiently alleged that his detention is "inconsistent with federal law . . . the balance of hardships and public interest factors weigh in favor" of granting the TRO. *Moreno Galvez v. Cuccinelli*, 387 F. Supp. 3d 1208, 1218 (W.D. Wash. 2019). "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird*, 81 F.4th at 1042 (citation modified). Where Chavez Ramirez is suffering irreparable harm in detention, the potential harm to the government – at worst, a short delay in detaining him until it makes the requisite showing of necessity before a neutral decisionmaker – is minimal. *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

Because Chavez Ramirez satisfies all of the requirements for temporary injunctive relief and such relief is necessary to restore the status quo, his motion for a temporary restraining order is GRANTED. And because "there is no realistic likelihood of harm to the [respondents] from enjoining [their] conduct," *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), no security is needed to ensure that respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. *Jorgensen*, 320 F.3d at 919.

**CONCLUSION**

For the reasons set forth above, it is hereby **ORDERED** that petitioners' motion for a temporary restraining order as to Chavez Ramirez is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents are **ORDERED** to

immediately release Chavez Ramirez from custody and are **ENJOINED AND RESTRAINED** from removing him from the Northern District of California or re-detaining him without providing a pre-deprivation hearing before a neutral decisionmaker at which the government establishes by clear and convincing evidence that detention is appropriate to prevent his flight or to protect the public. Should respondents choose to conduct a hearing, they are **ORDERED** to provide Chavez Ramirez with reasonable advance notice of the time and place of the hearing and an order issued. This Order shall remain in effect until **Friday, November 20, 2026**. **This Order SHALL be served on respondents such that they receive actual notice as soon as possible.** Petitioner shall file proof of service or a status report by no later than November 9, 2026 at 12:00 p.m. PST. Respondents shall file a status report confirming the release of Chavez Ramirez by no later than November 9, 2026 at 12:00 p.m. PST.

Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not be issued in favor of Chavez Ramirez. The hearing will be held via Zoom videoconference at **10:00am PST** on **November 20, 2026**. Respondents shall file a response to Chavez Ramirez's motion by no later than November 13, 2026 at 5:00 p.m. PST. Any reply shall be filed by November 18, 2026 at 12:00 p.m. PST.

**IT IS SO ORDERED.**

Dated: November 6, 2026

William H. Orrick
United States District Judge