United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUAN CHAVEZ RAMIREZ,
Plaintiff,

v.

SERGIO ALBARRAN, et al.,
Defendants.

Case No. 26-cv-13183-WHO

**ORDER GRANTING PRELIMINARY INJUNCTION**

On November 6, 2026, I granted a temporary restraining order ("TRO") prohibiting respondents[1] from re-detaining petitioner Jose Chavez Ramirez ("Chavez Ramirez") without first providing him a pre-deprivation hearing before a neutral decisionmaker to determine whether he posed a flight risk or was a danger to his community. I also issued an Order to Show Cause ("OSC") requiring respondents to explain why a preliminary injunction should not issue.

Respondents have now responded to the OSC, arguing that I lack jurisdiction over Chavez Ramirez's claims and that his request for relief fails on the merits. Those arguments are unpersuasive. Jurisdiction is proper under the circumstances here where the petitioner raises a due process challenge to the manner of detention or removal, rather than contesting the detention itself. And Chavez Ramirez has made a strong showing that he is likely to succeed on the merits of his due process claims, that he faces irreparable harm in the absence of injunctive relief, and that both the balance of equities and public interest weigh in his favor. For the additional reasons set forth below, Chavez Ramirez's request for a preliminary injunction is GRANTED.

[1] Respondents include Sergio Albarran, Field Office Director of the San Francisco Immigrations and Customs Enforcement ("ICE") Office; David J. Venturella, Acting Director of ICE; Todd W. Blanche, United States Attorney General; and Markwayne Mullin, Secretary of the Department of Homeland Security.

United States District Court
Northern District of California

## BACKGROUND

### 1. Factual Background

Chavez Ramirez is a native and citizen of Mexico. Petition for Writ of Habeas Corpus ("Pet.") [Dkt. No. 1] ¶ 11. He initially entered the United States without inspection in 2021, but was "not encountered by Border Patrol when he entered, has never been detained or released by ICE, has never been in removal proceedings, has never received a Notice to Appear, and has no order of removal." *Id.* ¶ 17. He has no criminal history. *Id.* ¶ 20. He is married to his wife Yazmin Espinoza Lugo ("Lugo"), a United States citizen, and the couple have two United States citizen children. *Id.* ¶¶ 18-19.

Chavez Ramirez alleges that Lugo completed a Form I-130 (Petition for Alien Relative) on his behalf, which was approved on April 16, 2026. *Id.* ¶ 18. On October 15, 2026, the United States Customs and Immigration Services ("USCIS") issued a notice "directing [Lugo] and Petitioner to appear for an interview on the approved petition at the USCIS San Francisco office . . . at 9:00 a.m. on November 4, 2026." *Id.* The USCIS reopened his petition that same day. *Id.* When Lugo and Chavez Ramirez appeared for their interview, a USCIS agent split the pair up to interview them separately. *Id.* ¶ 21. Two ICE agents then entered the office and arrested Chavez Ramirez on the basis of a "prior removal order." *Id.* ¶ 22. His attorney objected that "no removal order had ever been entered against him." *Id.* The ICE agents confirmed with their supervisor that no removal order had been entered, but then changed their position, asserting that they were detaining Chavez Ramirez based on an outstanding Notice to Appear. *Id.* Chavez Ramirez and his attorney denied that they had seen or read this Notice. *Id.* One of the agents quickly flashed a warrant with his name on his phone but did not allow Chavez Ramirez or his attorney to review it. *Id.* ¶ 23. When his attorney questioned whether a judge signed the warrant, the agent said that "their supervisor had signed it." *Id.*

The agents took Chavez Ramirez to a separate holding area from Lugo or his attorney. *Id.* ¶ 24. His attorney waited over five hours for a copy of his arrest warrant and the Notice to Appear, which were promised to her by the ICE agents. *Id.* ¶¶ 23-24. Since his arrest, Chavez Ramirez has not been provided a copy of "any arrest warrant, any Notice to Appear, any Notice of Custody

Determination, or any other document, with the sole exception of an inventory of his personal property." *Id.* ¶ 25.

**2. Procedural History**

Chavez Ramirez filed a petition for a writ of habeas corpus against respondents, raising four causes of action: (1) violation of his procedural due process rights under the Fifth Amendment of the United States Constitution; (2) violation of his substantive due process rights under the Fifth Amendment; (3) violation of 8 U.S.C. § 1226(a) and its implementing regulations, and (4) unlawful arrest in violation of the Fourth Amendment. On November 6, 2026, I granted a TRO prohibiting respondents from "re-arresting or otherwise re-detaining Chavez Ramirez without first providing him a hearing before an immigration judge at which the government establishes by clear and convincing evidence that detention is necessary to prevent his flight or to protect the public." *See* Dkt. No. 6 at 1. I also issued an OSC, requiring respondents to explain why a preliminary injunction should not issue. *See id.* Respondents filed their response to the OSC on Friday, November 12, 2026, and the issue is now fully briefed. *See* Response to Order to Show Cause ("OSC") [Dkt. No. 12]; Response to Order to Show Cause ("Repl.") [Dkt. No. 14]. I heard oral argument on November 20, 2026.

**LEGAL STANDARD**

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. This has been interpreted as a four-part conjunctive test, not a four-factor balancing test. But the Ninth Circuit has adopted a sliding scale approach, where a plaintiff may obtain an injunction so long as he demonstrates "serious questions going to the merits," that the balance of hardships "tips sharply" in his favor, that he is likely to suffer irreparable harm, and that an injunction is in the public interest. *See All. For the Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).



United States District Court
Northern District of California

## DISCUSSION

### I. Likelihood of Success on the Merits

#### A. Jurisdiction

Chavez Ramirez was detained pursuant to 8 U.S.C. § 1226(a), which governs the discretionary detention of noncitizens. In enacting Section 1226, Congress explicitly prohibited courts from reviewing "[t]he Attorney General's discretionary judgment" to act under the statute. 8 U.S.C. § 1226(e). Respondents believe that Chavez Ramirez "plainly challenges a discretionary decision made by ICE . . . to determine [his] custody pending removal proceedings," meaning his claims are barred from review under Section 1226(e). OSC at 4–5. I disagree.

Although Congress has precluded courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, *see* 8 U.S.C. § 1226(e), federal courts retain jurisdiction to review "constitutional claims or questions of law." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). Here, Chavez Ramirez "does not challenge a discretionary judgment, and the custody form reflects none." Repl. at 8. The crux of his habeas petition instead concerns constitutional challenges to the means of detention and the (lack of) process afforded to him. Those are different questions, and I have jurisdiction to hear them.

Respondents also argue that my November 10, 2026, order clarifying the scope of the TRO "emphatically usurps the Attorney General's discretionary authority to determine custody conditions," as I prohibited respondents from placing conditions on Chavez Ramirez's release from custody, including through reporting requirements and participation in the Alternatives to Detention ("ATD") program. *See* OSC at 5. But as explained in that order, respondents' conditional release of Chavez Ramirez constituted continued "custody" in violation of the TRO. Because courts have the "inherent power to enforce compliance with their lawful orders," the TRO clarification order did not violate any jurisdictional principles. *Shillitani v. United States*, 384 U.S. 364, 370 (1966).

#### B. Merits

Finding jurisdiction to be proper, I turn to the merits of Chavez Ramirez's petition. Chavez Ramirez asserts two overarching claims: (1) that the Fifth Amendment's Due Process

United States District Court
Northern District of California

Clause and 8 U.S.C. § 1226(a) require the government to provide meaningful notice and an opportunity before a neutral decisionmaker to prove that he is not a danger to the community or a flight risk prior to detention; and (2) that his arrest on November 4, 2026, violated the Fourth Amendment, 8 U.S.C. § 1226(a), and 8 U.S.C. § 1357(a). Because the procedural due process issue is dispositive, I address that issue below and decline to address Chavez Ramirez's substantive due process or Fourth Amendment warrantless arrest claims.[2] *See Ramirez Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2026 WL 2211537, at *7 (N.D. Cal. July 31, 2026) (Freeman, J.).

**1. Exhaustion**

Respondents argue that Chavez Ramirez cannot yet bring his procedural due process claim in federal court because he failed to exhaust the "several layers of process" afforded to him under Section 1226(a). OSC at 11–14. While respondents acknowledge that exhaustion is a prudential matter, not jurisdictional, they nonetheless assert that courts generally require habeas petitioners to "exhaust available judicial and administrative remedies before seeking relief" in federal court. *Id.* at 12 (quoting *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006)).

A court may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Even if the *Puga* factors weigh in favor of prudential exhaustion, exhaustion may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). If a petitioner is prudentially required to exhaust

---

[2] Respondents spend a significant portion of their brief arguing that a valid warrant was issued prior to Chavez Ramirez's arrest, making his Fourth Amendment warrantless arrest claim improper. *See* OSC at 6–8. My TRO order focused exclusively on the due process claims and did not reach the Fourth Amendment claims. Accordingly, I decline to address these claims at the preliminary injunction stage and focus solely on the due process claims.

administrative remedies but fails to do so, a district court should dismiss the habeas petition without prejudice or stay the proceedings until the administrative remedies have been exhausted. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).

Some courts have found that the *Puga* factors weigh in favor of prudential exhaustion in cases where an individual detained did not avail themselves of the procedures afforded under Section 1226(a). *See e.g.*, *Okoth v. Kaiser*, No. 1:25-cv-01936-KES-SAB, 2026 WL 45199, at *3–4 (E.D. Cal. Jan. 7, 2026); *Flores v. Lyons*, No. 1:26-cv-0069-DAD-JDP, 2026 WL 1816121, at *2–3 (E.D. Cal. June 24, 2026); *Gomez v. Albarran*, No. 26-cv-01790-NW, 2026 WL 2943147, at *4–5 (N.D. Cal. Sept. 30, 2026) (Wise, J.). The Ninth Circuit has also found the bond redetermination hearings provided under Section 1226(a) are a facially constitutional procedure. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022). But contrary to respondents' suggestion that Chavez Ramirez did not seek a bond redetermination hearing from an immigration judge, *see* OSC at 11, Chavez Ramirez promptly requested that an immigration judge review his custody determination after being detained. *See* Declaration of Shira Levine in Support of TRO ("Levine Decl.") [Dkt. No. 5] Ex. H (Notice of Custody Determination) at 2. Accordingly, requiring exhaustion in this case would be a "futile gesture. *See Laing*, 370 F.3d at 1000. Exhaustion is not a barrier to Chavez Ramirez bringing his claims.

**2. Liberty Interest**

Finding that prudential exhaustion does not apply, I turn to whether Chavez Ramirez has a vested liberty interest in remaining free from custody under the circumstances. Respondents argue that Chavez Ramirez has no liberty interest in this case because he was not previously detained by ICE. OSC at 8. That is wrong.

Chavez Ramirez's significant community ties and the government's decision not to detain him at any point since his wife filed the spousal petition in 2024 gives rise to a "protected liberty interest in remaining out of immigration custody that can . . . be taken away only if the government's procedure for doing so accords with due process." *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 2654723, at *2 (N.D. Cal. Sept. 8, 2026) (Corley, J.). Respondents' insistence that Chavez Ramirez lacks a liberty interest because they never

previously sought to detain him is "specious." *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (Corley, J.). "Although the government did not detain and then release [Chavez Ramirez], it did make a decision not to detain him." *Santos Doria v. Albarran*, No. 26-cv-13374-JSC, 2026 WL 3459944, at *3 (N.D. Cal. Nov. 13, 2026) (Corley, J.). By concluding there was no need to detain Chavez Ramirez after his spousal petition was approved, the government "vested in [him] a liberty interest in his continued freedom." *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026). *Cf. Rubio Vera v. Albarran*, No. 26-cv-10858-VC, 2026 WL 2884965, at *1 (N.D. Cal. Sept. 25, 2026) (Chhabria, J.) (recognizing that the "government had not affirmatively decided that [petitioner] should remain free" despite petitioner's asylum application pending for four years). Accordingly, Chavez Ramirez has at least "the same liberty interest in [his] continued freedom as an individual initially detained" and released. *Kharitonova*, 2026 WL 531441, at *2.

Respondents maintain that Chavez Ramirez's attempt to fashion a liberty interest, despite his previous lack of detention, is akin to "adverse possession." OSC at 9. In their view, a liberty interest does not exist simply by one "entering the United States or by continuing to reside here after entry." *Id.* But as the Supreme Court has long held, after a noncitizen "gains admission to our country and begins to develop the ties that go with permanent residence[,] his constitutional status changes" and he "has a right to due process." *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing between noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Courts have extended these rights to those who were not initially detained upon entry to the United States. *See, e.g.*, *Paau Cho v. Albarran*, No. 26-cv-12538-PCP, 2026 WL 3513604, at *1, *5 (N.D. Cal. Nov. 15, 2026) (Pitts, J.) (finding that petitioner had a liberty interest despite "never encounter[ing] immigration authorities" until his detention seven years after entry to the United States); *Chiguil Chiguil v. Noem*, No. 1:26-cv-1844-DAD-CSK, 2026 WL 913195, at *5 (E.D. Cal. Apr. 3, 2026) (noncitizens "who entered the United States without encountering immigration authorities . . . retain a liberty interest in being free from imprisonment"), *report and recommendation adopted*, 2026 WL 983134 (E.D. Cal. Apr.

13, 2026); *Chaparro Ayala v. Albarran*, No. 26-cv-09430-CRB, 2026 WL 2722780, at *3–4 (N.D. Cal. Sept. 15, 2026); *Murek v. Albarran*, No. 26-cv-10719-PCP, 2026 WL 3062130, at *1, *3 (N.D. Cal. Oct. 13, 2026) (Pitts, J.).

Chavez Ramirez has "established connections in this country" sufficient to make him "a part of our population." *Thuraissigiam*, 591 U.S. at 107; *Yamataya*, 189 U.S. at 101. He entered the United States over five years ago. He has built a life in this country with his wife and two children, all United States citizens. *See* Pet. ¶¶ 7–8, 17–18. He has "develop[ed] ties," *Landon*, 459 U.S. at 32, and has spent many years building connections to the country. He is accordingly entitled to due process under the Fifth Amendment. His protected liberty interest in remaining out of immigration custody could therefore be taken away only if the government's procedure for doing so complied with the Due Process Clause.[3]

### 3. *Mathews*

Because Chavez Ramirez's arrest infringed upon his protected liberty interest, I must now determine whether he was entitled to additional process—such as the issuance of a warrant or compliance with the statutory requirements governing warrantless arrests set forth in 8 U.S.C. § 1357(a)(2)—prior to being detained.

The parties argue over whether *Mathews v. Eldridge*, 424 U.S. 319 (1976), governs this dispute. Respondents contend that because Section 1226(a) "provide[s] extensive procedural protections that are unavailable under other detention provisions," noncitizens subject to detention under Section 1226(a) "have no due process right to a pre-deprivation hearing" (meaning that *Mathews* does not apply). OSC at 9 (quoting *Rodriguez Diaz*, 53 F.4th at 1202); *see Njonjo v. Albarran*, No. 26-cv-2188-JST, 2026 WL 716771, at *3 (N.D. Cal. Mar. 13, 2026) (Tigar, J.) ("In

---

[3] Respondents urge me to apply the Fifth Circuit's recent decision in *Rodriguez v. Vergara*, --- F. 4th ---, 2026 WL 3181188 (5th Cir. Oct. 23, 2026), to find that there is no "blanket 'liberty' interest" merely by entering the United States. OSC at 9. In *Vergara*, a Fifth Circuit panel concluded that it would be "untenable" to conclude that petitioners "possess a core, enumerated interest in 'freedom from physical restraint,' accruing because of the length of their residence here and their significant ties to the country and their communities." 2026 WL 3181188, at *10. But *Vergara* involved mandatory detention under Section 1225, and its holding is nonbinding in this circuit. I decline to adopt the reasoning in it considering the numerous in-circuit authorities suggesting that individuals with significant ties to the United States maintain a liberty interest in being free from detention.



United States District Court
Northern District of California

light of the explicit holding from *Rodriguez Diaz* that those [§ 1226(a)] post-deprivation procedures satisfied the strictures of due process, the Court is unable to adopt Njonjo's position [that he is entitled to a pre-deprivation hearing]").

While Section 1226(a) provides additional procedural safeguards for detainees, the Ninth Circuit has emphasized that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context" and has assumed, without deciding, that *Mathews* applies in the Section 1226(a) context. *Rodriguez Diaz*, 53 F.4th at 1206–07; *see Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716 (9th Cir. 2011) (stating that *Mathews* "is not a bright line test, but is flexible depending on the circumstances). Numerous judges within the Northern District of California have applied the *Mathews* test to Section 1226(a) challenges. *See, e.g.*, *Mendoza de la Cruz v. Albarran*, No. 26-cv-10648-AMO, 2026 WL 2944153, at *5–7 (N.D. Cal. Sept. 30, 2026) (Martínez-Olguín, J.); *Y.M.C.P. v. Albarran*, No. 26-cv-08341-CRB, 2026 WL 2497562, at *5 (N.D. Cal. Aug. 25, 2026) (Breyer, J.); *Ruiz Otero v. Kaiser*, No. 25-cv-06536-NC, 2026 WL 2497542, at *6 (Cousins, M.J.). Respondents have not shown why the existence of procedural safeguards under Section 1226(a) preclude *Mathews* from applying to his due process challenge. I accordingly analyze Chavez Ramirez's claims under *Mathews*.

*Mathews* identifies three factors that must be balanced in determining what procedures due process requires with respect to the deprivation of a protected interest:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. Each of these three factors supports the conclusion that Chavez Ramirez was entitled, at minimum, to the pre-arrest statutory process Congress affords to noncitizens.

The first factor—Chavez Ramirez's private interest—weighs in his favor. As explained above, Chavez Ramirez has a substantial interest in remaining out of custody. Indeed, his interest in remaining free from "government custody, detention, or other forms of physical restraint [] lie[]

at the heart of the liberty" protected under the Fifth Amendment. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Paau Cho*, 2026 WL 3513604, at *6. Courts must not "minimize the importance and fundamental nature of the individual's right to liberty." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (internal quotations and citation omitted). Chavez Ramirez has lived free in the United States for over five years, and he has a substantial interest in remaining in his home and continuing his employment. *See Paau Cho*, 2026 WL 3513604, at *6; *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (Pitts, J.) (petitioner had "an interest in remaining in her home, continuing her employment, providing for her family, obtaining necessary medical care, maintaining her relationships in the community, and continuing to attend her church"). There is also no indication that he poses a flight risk or a danger to the community. To the contrary, the record shows that Chavez Ramirez complied with ICE's request to appear for the interview that led to his arrest on November 5. Accordingly, Chavez Ramirez's private interest in retaining his liberty is "significant." *See Paau Cho*, 2026 WL 3513604, at *6.

The second factor, the risk of erroneous deprivation, also weighs in Chavez Ramirez's favor. Respondents argue that the risk of erroneous deprivation is "relatively small," as Section 1226(a) provides "numerous levels of review, each offering [the detainee] the opportunity to be heard by a neutral decisionmaker." OSC at 11 (quoting *Rodriguez Diaz*, 53 F.4th at 1209–10). But "the risk of an erroneous deprivation [of liberty] is high" when, as here, a petitioner has not received any bond or custody determination hearing. *Kharitonova*, 2026 WL 2654723, at *2. Chavez Ramirez points to numerous process issues that suggest a risk of erroneous deprivation is high, including (1) that "arresting officers first said that a removal order existed," when it did not; (2) the "processing record misstate[d] [his] family and immigration history"; (3) the custody form gave "no reason to detain" him; (4) no bond hearing was set, and the earliest he could appear before an immigration judge was twelve days later in the Central District of California; and (5) the arresting officers "planned the arrest at least a day in advance," but made no attempt to determine whether he was a flight risk or a danger to his community. Repl. at 5–6 (citations omitted). Given these concerns and the issues presented in his habeas petition, "a post-deprivation hearing is not a sufficient procedural safeguard." *Id.*; *see Domingo v. Kaiser*, No. 25-cv-05893-RFL, 2025 WL

United States District Court
Northern District of California

1940179, at *3 (N.D. Cal. Jul. 14, 2025) (Lin, J.) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").

Finally, the government has not articulated any legitimate interest in support of detaining Chavez Ramirez without a pre-detention hearing. *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025) (cleaned up). Chavez Ramirez points out that respondents "planned the arrest at least a day in advance." Repl. at 6 (citing Starrett Decl. Ex. 1 at 2). Respondents had the time and means to conduct a pre-deprivation hearing but chose not to. Considering that such a hearing is a "de minimis burden on the government," respondents have not shown how this factor weighs in their favor. *Ffriend v. Albarran*, 2026 WL 1915726, at *8.

In sum, each of the *Mathews* factors favor Chavez Ramirez. He has demonstrated a strong likelihood of success on the merits of his procedural due process claims.

## II. Irreparable Harm

"[S]imply showing some 'possibility of irreparable injury' fails to satisfy" the irreparable harm factor. *Nken*, 556 U.S. at 434–35 (citing *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998), *abrogated on other grounds*, *Singh v. Holder*, 658 F.3d 879 (9th Cir. 2011)). The party seeking relief must provide sufficient evidence that they will be irreparably injured absent a preliminary injunction. *Id.* at 426.

Chavez Ramirez asserts that the irreparable harm he suffered includes the deprivation of his constitutional rights and being separated from his family. *See* TRO Mot. at 21–22. Respondents argue that these harms are "insufficient" because detention is a "constitutionally valid aspect of the deportation process." OSC at 14 (quoting *Demore*, 538 U.S. at 523). But as Chavez Ramirez notes, respondents' argument presumes that his detention was constitutional. It was not. Because the unconstitutional deprivation of liberty itself is an irreparable harm, Chavez Ramirez has established that his detention constituted an irreparable injury. *See Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017).

United States District Court
Northern District of California

**III. Balance of the Equities and Public Interest**

In cases where the federal government is the opposing party, the balance of the equities and public interest factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1094 (9th Cir. 2014). These two factors often turn on whether the district court finds a likelihood of success on the merits of the underlying claim. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).

Respondents argue that the "public and governmental interest in upholding the existing regulatory scheme, ensuring that the role of the immigration courts is not usurped or improperly collaterally attacked through habeas proceedings, and requiring [Chavez Ramirez] to avail himself of the procedure protections already afforded by the § 1226(a) framework rather than creating additional, burdensome processes, is significant." OSC at 16. But the equities described in this Order and the public interest in upholding the due process rights of those living in our country, including noncitizens, outweigh these asserted governmental interests, especially considering that Chavez Ramirez is likely to prevail on the merits of his claims.

**CONCLUSION**

Based on the foregoing, I ENTER the following preliminary injunction:

Respondents are ENJOINED and RESTRAINED from re-detaining Chavez Ramirez: (1) without notice and a pre-deprivation hearing before a neutral decisionmaker in which an individualized determination is made that he poses a flight risk or danger to public safety such that he must be detained; or (2) in the absence of a material change in circumstances justifying his detention.

Respondents are ENJOINED and RESTRAINED from removing Chavez Ramirez from the United States or transferring him out of the Northern District of California to preserve this Court's jurisdiction during the pendency of his habeas proceeding. This Order shall remain in effect until further order of the Court.

Respondents are ENJOINED and RESTRAINED from imposing electronic monitoring, ATD enrollment, reporting requirements, or other restraints on his liberty absent notice and

United States District Court
Northern District of California

hearing before a neutral decisionmaker.

**IT IS SO ORDERED.**

Dated: November 20, 2026

William H. Orrick
United States District Judge